Anthony P. PARRINELLO, Appellant,

v.

William E. FINN, Postmaster, E. H. Klassen, Postmaster General of the United States Postal Service, United States Postal Service, Appellees.

No. 321, Docket 78–6117.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1978.

Decided Dec. 12, 1978.

A. Andrew Giangreco, Alexandria, Va., for appellant.

Eugene Welch, Asst. U. S. Atty., Rochester, N. Y. (Richard J. Arcara, U. S. Atty. for the Western District of New York, Buffalo, N. Y., of counsel), for appellees.

Before LUMBARD, FRIENDLY and OAKES, Circuit Judges.

PER CURIAM:

Appellant brought suit for reinstatement and back pay because of material misrepresentations leading to his resignation from employment with the United States Postal Service. The action was transferred to the United States District Court for the Western District of New York.[1] Harold P.

Burke, Judge. We hold that the district court failed to make sufficient findings of fact to enable us adequately to review its decision dismissing the action on the merits.[2] *See United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Fed.R.Civ.P. 52(a). Accordingly, we vacate the judgment of dismissal and remand the case for further findings of fact pursuant to Fed.R.Civ.P. 52(a).

A brief statement of the evidence is required as background for our specific requests for findings. Appellant, a special delivery messenger, suffered a work-related injury in May 1971 and took a medical leave from his job. As of April 3, 1972, his doctor still had not cleared him for return to work. On that day, pursuant to arrangements that appellant had made two or three days earlier with Samuel Graziano, Supervisor of Employee Services and Benefits, appellant went to see Graziano for a "status call," an inquiry about appellant's condition and ability to return to work. Graziano testified that Edward Rigney, Superintendent of Employment and Services, had asked him sometime earlier that week to call in appellant to see if appellant would be interested in reassignment as a clerk. Rigney, in turn, was acting in response to a memorandum from Harold Rossiter, Superintendent of Delivery and Collection, advising Rigney of appellant's physical problems and asking him to consider the possibility of a transfer for appellant. Appellant saw both Graziano and Rigney April 3. Before leaving the post office appellant had filled out and filed a resignation form. The testimony about who initiated the discussion of resignation was conflicting. It is clear, however, that Rigney told appellant that in the absence of evidence that he could return to work within the next six months, he could be "separated"[3] for disability the following month, when he would have been out of work for

---

1. Appellant originally filed suit in the United States District Court for the District of Columbia. By order of that court on August 22, 1974, the case was transferred *nunc pro tunc* to the United States District Court for the Western District of New York.

2. *Parrinello v. Finn*, Civ.No. 74–391 (W.D.N.Y. June 6, 1978).

3. "Separation" is the term used by the postal regulations for termination of employment.

one year. It is also clear that appellant and Rigney discussed the availability of reinstatement after resignation and that Rigney informed appellant that reinstatement would depend on his work record and his physical suitability for the job at the time that he requested reinstatement.

The district court found that appellant "failed to prove that his resignation was the result of material misrepresentations by any Postal Service employee acting in his official capacity." [4] We agree that in light of the conflicting testimony, the trial judge could properly credit Rigney's testimony that he did not tell appellant that he could be reinstated automatically and discount appellant's testimony to the contrary; and we obviously do not hold that this finding was clearly erroneous. But appellant's allegations of misrepresentation include more than just whether the reinstatement would be automatic. They also apply to whether termination was necessary to begin with and whether reinstatement was available at all.

On the issue of termination, Rigney testified that he told appellant that appellant could be considered for a separation after a one-year disability if there were no evidence that he might return to work in six months. Postal Service Regulation 717.-342(d),[5] however, provides for an extension of six months or a year; and there is no evidence that anyone informed appellant that he might obtain a year's extension of disability leave. The failure to disclose the longer period would seem to have been a misrepresentation of fact although its materiality is in doubt. In light of appellant's testimony that he had a doctor's appointment scheduled for April 5, 1972, two days after the status call, and the possibility that he might have believed that he would be able to return to work within a year even if

not in six months, the misrepresentation could have been material.

On the issue of the availability of reinstatement, Rigney testified that he told appellant that reinstatement would depend on his work record and his physical suitability for the job. He further testified that he had no knowledge at the time of the April 3, 1972, meeting with appellant of Rossiter's remarks that appellant could not do the job; to Rigney's knowledge, appellant's job performance was satisfactory. But Rigney also testified that on or before April 3 he had all the medical records and was aware of the doctor's conclusion that appellant's return date was indefinite and that Rigney knew the day that he talked to appellant that appellant was not physically able to perform. Graziano testified that Rigney told him to call appellant in for a status call and gave him the Rossiter memorandum, which as noted above clearly indicates appellant's medical problems. Rigney confirmed that he had asked Graziano to talk to appellant. Graziano also testified that he might have given Rigney the Rossiter memorandum, implying that Rigney had given it to Graziano initially and that Graziano was giving it back or at least that Rigney would have seen the memorandum at the interview with appellant. Because Rigney clearly did know of appellant's condition and his unfitness for employment, his failure to disclose anything more about the conditions for reinstatement than "work record" and "physical suitability" may well have constituted a material misrepresentation.

Moreover, Rigney, in his enumeration of conditions for reinstatement, did not disclose to appellant that a moratorium on hiring by the Postal Service was to take effect on April 3, 1972, although he testified

---

4. *Parrinello v. Finn, supra* note 2, at 2.

5. Reg. 717.342(d) provides:

An employee receiving benefits under the Federal Employees' Compensation Law as a result of work related illness or injury shall be granted leave without pay up to one year while receiving such benefits. If at the end of such year, a review of his case indicates he may be able to return at the end of six months or a year he shall be granted a six months or a one year extension as appropriate. If the review indicates the employee will not or cannot return to work at the end of six months or a year, further leave without pay shall not be granted and appropriate steps should be taken to separate the employee.

that he knew at the time of the interview with appellant that a moratorium was pending. The failure to disclose the pending moratorium may have been a misrepresentation; and in light of Rigney's testimony that he did not rehire appellant because of the moratorium, again the misrepresentation might have been material.

There are thus numerous unanswered questions of fact, and we suggest several to the trial judge for resolution on remand:

1. Did Rigney inform appellant that he could remain on leave without separation for an additional year following the first year or only an additional six months? If he did not inform appellant of the year's extension, was the misrepresentation a material factor leading to appellant's resignation?

2. Did Rigney know at the time of the April 3 interview with appellant of appellant's poor work record and physical unsuitability for reinstatement? If so, was his failure to disclose his opinion that appellant would not be reinstated a material misrepresentation of the availability of reinstatement?

3. Did Rigney know at the time of the April 3 interview that a hiring moratorium was to go into effect that day? If so, was his failure to disclose the moratorium a material misrepresentation of the availability of reinstatement?

The evidence as to certain other events is also conflicting, and we believe that it would be helpful for possible future appellate review if the trial judge would make specific findings of fact on these issues as well:

4. How did appellant obtain a resignation form? Did Graziano or Rigney supply it or did another supervisor? Did appellant obtain it on his own? If so, how?

5. Did appellant fill out the resignation form in Rigney's office? Did Rigney help appellant fill out the form?

6. Did appellant tender his resignation form to Anthony Lorenzo, the Personnel Assistant, and have an exit interview with Lorenzo? If appellant did not tender the resignation form to Lorenzo, to whom did appellant tender the form?

7. Did appellant resign, as appellees allege on appeal, because he had already moved to Castile, New York, and wanted to avoid repeated trips to Rochester for status calls?

8. Did the doctor clear appellant for work at the April 5 or the April 28 doctor's appointment?

9. Did the Postal Service ever offer appellant a job after his resignation? If so, was he physically suited for the job? And if he was offered another job, why, physical suitability aside, if his work record was good enough to make reinstatement available in the job that he was offered, was his work record not sufficient, in Rigney's opinion, for appellant to be reinstated as a special delivery messenger?

Only with specific findings on these issues of fact can we properly fulfill our appellate function and review the findings of the district court under the clearly erroneous standard of review.

Reversed and remanded.

